**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ROGER D. STATON,

    Plaintiff,

    v.

DOMINICK PERRONE, et al.,

    Defendants.

Case No. 1:24-cv-592

Hopkins, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

On September 18, 2024, Plaintiff Roger D. Staton filed a complaint in the Court of Common Pleas for Warren County, Ohio. On October 17, 2024, Defendants removed the case to this federal Court. Although most of the defendants filed answers to the complaint, (*see* Docs. 12, 16), Defendant Vance moved to dismiss, or alternatively, for judgment on the pleadings. For the reasons that follow, the undersigned now recommends that Defendant Vance's motion be GRANTED.[1]

**I.    Standard of Review**

Defendant has filed a motion to dismiss the claims against him under Fed. R. Civ. P. 12(b)(6). Alternatively, Defendant seeks a judgment on the pleadings under Rule 12(c). Although the undersigned finds the instant motion to be procedurally appropriate under Rule 12(b)(6), the standard of review for a motion filed under Rule 12(c) is identical. Under either provision, the Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc.*

---

[1] The presiding district judge has referred this case to the undersigned magistrate judge. (*See* Doc. 18).

*v. Illinois Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 2007). Matters outside the pleadings may not be considered under Rule 12(b)(6). So when considering Defendant's motion to dismiss, this Court must determine whether Plaintiff's complaint alone contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986)). A complaint need not contain "detailed factual allegations," but must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557, 127 S.Ct. 1955.

In confirming the applicable federal standard of review, the undersigned acknowledges that Plaintiff originally filed this case in state court, where a more liberal pleading standard applies. *See Golden Eagle Resources II, LLC v. Rice Drilling D, LLC*, No. 2:22-CV-02374-M, 2023 WL 1927799, at *8 (S.D. Ohio, Feb. 10, 2023) ("Ohio is a notice-pleading state, which has adhered to the 'no set of facts'" pleading standard even

2

after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), heightened the federal pleading standard."). But as explained in *Golden Eagle*, Plaintiff's complaint became subject to the federal standard of review following removal to this Court.

> The federal rules, including the federal pleading standard, apply equally to cases initiated in federal court as to civil actions that are removed from state court. FED. R. CIV. P. 81(c)(1); *see Vanhook v. Somerset Health Facilities, LP*, 67 F. Supp. 3d 810, 815–17 (E.D. Ky. 2014) (collecting cases on the impact of *Twombly* and *Iqbal* on cases removed from state court).

*Id.*, 2023 WL 1927799, at *8 (internal footnote omitted).

## II. Summarizing the Allegations of Plaintiff's Complaint

Plaintiff's 48-page complaint is comprised of 273 numbered paragraphs that allege that five Defendants are liable to Plaintiff for civil damages under approximately nine separate legal theories.[2] Of the various claims, only one is aimed at Defendant Vance. Because the scope of this Report and Recommendation is limited to Defendant Vance's motion to dismiss, this summary focuses on allegations that pertain to Vance, with reference to other allegations and defendants solely for context.

In his "Facts" section ("Count I"), Plaintiff explains that this lawsuit arose from an alleged incident of "road rage" by a neighbor, Defendant Dominick Perrone. Perrone resides at 339 Summit Street; Plaintiff resides at 355 Summit Street. In addition to Perrone, Plaintiff names as defendants two police officers who responded to the "road rage" incident, the City of Lebanon, and Defendant Vance. Vance resides at 335 Summit Street.

---

[2]Plaintiff's theories of relief begin with "Count II" and end with "Count X." In addition to nine articulated claims, "Count I" is comprised of a "Facts" section, and "Count XI" concludes with an "Injuries Sustained/Demand" section.

On August 1, 2024, Plaintiff alleges that a truck driven by Perrone nearly ran Plaintiff off the road while Plaintiff was riding his bicycle. Plaintiff subsequently observed the truck parked in front of Perrone's house. (Doc. 3, ¶¶8, 26). After a brief verbal exchange, Plaintiff alleges that Perrone got back in his truck and chased Plaintiff on his bicycle, trying to "either hit Plaintiff or push him into the curb" at least twice. (*Id*., ¶22). During the chase, Plaintiff "pulled onto the sidewalk in front of 335 Summit Street and waited to see what Perrone was going to do." (*Id*., ¶28). Perrone allegedly had shouted that he had a gun, "was shouting obscenities" as he exited the truck and walked toward Plaintiff, and "appeared to have something in his right pocket." (*Id.,* ¶31). Plaintiff was "screaming for Perrone to stay away" and "yelled for the neighbors to call the police." (*Id*., ¶32). Hearing the commotion, Vance and other neighbors "started coming out on their porches." (*Id*., ¶ 33).

Initially a female walked out of Vance's residence and started yelling at Plaintiff to "get away from her property and to get off her sidewalk." (*Id.*, ¶ 34). Shortly thereafter, Vance appeared "and started waving his arms and telling Plaintiff to get off 'his sidewalk.'" (*Id*., ¶ 36). Vance allegedly "called Plaintiff an 'asshole' and aggressively came up to Plaintiff within about three or four feet of where Plaintiff was standing on the sidewalk." (*Id.*, ¶37). Plaintiff directed Vance "to get away from Plaintiff and leave him alone." (*Id*., ¶38). When police arrived, the officer directed "both the female and the male at 335 Summit Street to move away from the sidewalk and go stand far away." (*Id*., ¶41; *see also* ¶ 43).

Plaintiff's nine claims are based on the defendants' respective involvement in the August 1 incident and/or related proceedings. Eight of those claims are asserted against

4

defendants other than Vance, but are summarized here for context. In Counts II and III, for example, Plaintiff alleges that Perrone committed "assault and aggravated assault with a deadly weapon" under Ohio law with his motor vehicle on August 1, 2024, and that Perrone's conduct also subjects him to liability for "menacing and menacing by stalking." Plaintiff also alleges that Perrone is liable for "falsification of petition for a protection order" based on Perrone's attempt to have criminal charges filed against Plaintiff and a petition filed by Perrone on August 5, 2024 for an Order of Protection wherein Perrone stated: "(Roger Staton) stalked my house every day since the incident." (Count IV, ¶ 151).

Counts V and VI allege that the responding police officers are liable for their conduct on August 1 and during follow-up events in early August. In Count V, Plaintiff seeks to hold Defendant Officer Haller liable for defamation and/or slander per se based on allegations that Haller made false statements about Plaintiff and impugned his professional and business reputation. In Count VI, Plaintiff alleges that Defendants Hounshell and Haller are both liable for failing to report a felony, because Perrone admitted facts to them that would establish felony crimes. Plaintiff alleges that the City is also liable for this claim. Counts VIII-X seek to hold the City and its police officers liable under additional legal theories. *See e.g.*, Count VIII (seeking to hold Defendant Hounshell liable for "falsified statements" about Plaintiff on August 1), Count IX (alleging that the City of Lebanon Police Division failed to comply with a civil stalking protection order that Plaintiff obtained against Perrone on August 9, 2024), Count X (alleging liability of the City and/or officers under 42 U.S.C. § 1983). "Count XI" sets forth Plaintiff's request for relief.[3]

---

[3] In Count XI, Plaintiff alleges that he suffered "extreme emotional distress, physical pain and suffering, fear and anxiety, mental pain and suffering, inability to pursue gainful employment, and a loss of enjoyment of

5

The complaint contains only a single claim against Defendant Vance for "Assault." (*See* Count VII, ¶¶175-201). Plaintiff alleges that Defendant Vance is civilly liable for assault based on his words and actions in trying to force Plaintiff to move from the public sidewalk in front of Vance's home.

### III. Analysis

#### A. Plaintiff's "Pro Se" Attorney Status

Plaintiff is a licensed attorney who has "practiced litigation and criminal law in Warren County and beyond for the past almost forty nine years." (Doc. 3, ¶103). His practice includes civil litigation "on behalf of clients against police agencies in Warren County" as well as the criminal defense of those charged with crimes in Warren County. (*Id*.) In the above-captioned case, Plaintiff appears pro se. But Plaintiff is not entitled to have his complaint liberally construed simply because he proceeds pro se. "[B]ecause an attorney pro se litigant would be held to the standard of an attorney in representing others, it is not unfair to hold [the litigant] to the same standard when representing himself." *Wasserman v. Weir*, No. 2:24-cv-3935, 2025 WL 227157, at *1 n.1 (S.D. Ohio, Jan. 17, 2025) (quoting *Jones v. Miramed Revenue Grp*., LLC, No. CV 18-11542, 2019 WL 2521134, at *2 (E.D. Mich. May 14, 2019), report and recommendation adopted, No. 18-CV-11542, 2019 WL 2513344 (E.D. Mich. June 18, 2019) (additional citations and quotation marks omitted)).

---

life" based on the "negligent, intentional and criminal acts of the Defendants, individually and jointly." (Doc. 3, ¶ 272). He seeks "not less than $250,000.000 per Defendant per count as compensation" as well as punitive damages, attorney fees, court cots, and interest. (¶ 273).

6

### B. Plaintiff Fails to State a Claim for Civil Assault

Defendant Vance persuasively argues that Plaintiff's allegations lack sufficient factual specificity to state a claim for civil "assault" against him under Ohio law (Count VII) or any other plausible claim. Vance maintains that he was merely a bystander to the primary dispute between Plaintiff and Perrone. As Vance puts it, Plaintiff's allegations involve "a public dispute, with no physical contact, no threats, apparently no legal proceedings (by Vance), and no actual harm." (Doc. 4, PageID 153).

The undersigned agrees that, as to Vance, Plaintiff's allegations fail to state any plausible claim for civil assault under Ohio law.

> [T]he tort of assault is defined as the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact. The threat or attempt must be coupled with a definitive act by one who has the apparent ability to do the harm or to commit the offensive touching. An essential element of the tort of assault is that the actor knew with substantial certainty that his or her act would bring about harmful or offensive contact.

*Gerber v. Veltri*, 203 F.Supp.3d 846, 851 (N.D. Ohio 2016) (quoting *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 406, 614 N.E.2d 1148 (1993)).

> [A]ssault is the beginning of an act which, if consummated, would constitute battery. The act must also be such as to cause reasonable fear of immediate physical violence.

*Matlock v. Ohio Dept. of Liquor Control*, 665 N.E.2d 771, 774, 77 Ohio Misc.2d 13, 18 (Ohio Ct. Cl., 1996) (additional citation omitted). "Liability for assault requires that the actor *actually intend* to place another in apprehension of a harmful or offensive contact." *Gerber*, 203 F. Supp.3d at 851 (additional citations omitted, emphasis added).

All that Plaintiff has alleged in his complaint is that Vance "came charging" out of his house and stopped within "three or four feet" of Plaintiff standing on the sidewalk in

7

front of Vance's residence, while yelling at Plaintiff to "get away from his house and get off his sidewalk." (*Id.*, ¶ 185). Prior to Vance, Plaintiff alleges that a female came out of Vance's house and similarly yelled at Plaintiff to "get off her sidewalk and move on." (*Id.*, ¶ 180). Although Plaintiff complains that Vance "used vulgar language including calling Plaintiff an 'asshole,'" Plaintiff never alleges that Vance made any verbal threat of physical harm. Thus, Plaintiff fails to allege facts that would reasonably suggest: (1) that Vance verbally threatened to physically harm or touch Plaintiff; (2) that Vance in fact attempted to physically harm or touch Plaintiff; (3) that Vance "knew with substantial certainty" that his actions would "bring about harmful or offensive contact" with Plaintiff; or (4) that Vance intended for Plaintiff to be put in apprehension of physical contact by Vance. *Accord Shoup v. Doyle*, 974 F.Supp.2d 1058, 1094 (S.D. Ohio 2013) (dismissing claim of assault where plaintiff failed to allege the "'definitive act' of the tort…such as a statement or threat, by [defendant]… that placed her in fear of harmful contact.").

In the absence of any allegations that reflect a verbal threat of imminent physical harm, Plaintiff bases his claim of assault on Vance's physical actions. Specifically, Plaintiff alleges that "Defendant Vance, by his physical confrontational behavior on the public sidewalk, caused Plaintiff to experience an apprehension of harm."(*Id.*, ¶191). Conclusory assertions aside, the facts alleged remain insufficient to make out a claim. Although Plaintiff alleges that Vance walked and moved "aggressively," he remained "three or four feet" away. (*Id.*, ¶37). Plaintiff does not allege that Vance made any movements to strike Plaintiff or gestures that would objectively suggest that Vance intended to physically harm Plaintiff. (*Id.*, ¶ 186). To the contrary, the allegations of the complaint reflect that all of Vance's words and actions (regardless of how loudly spoken or communicated) were

8

conveyed in a manner consistent with Vance's desire for Plaintiff to leave the area in front of Vance's house. None of the allegations suggest that Vance verbally or physically threatened Plaintiff, either through word or action.

Plaintiff argues that given the context of *Perrone*'s verbal threat and physical actions, it was reasonable for Plaintiff to believe that Vance intended to physically assault him. But Plaintiff's *subjective* fear of harm from Perrone is not sufficient to state a claim of assault against Vance. To make out a claim of assault against Vance, Plaintiff must prove that Vance (not Perrone) spoke and/or acted with the intent for Plaintiff to fear physical harm from him. And unlike Plaintiff's very different allegations against Perrone, Plaintiff fails to include any allegations that give rise to an *objectively* reasonable inference of such intent by Vance.[4]

In his response in opposition to Vance's motion to dismiss, Plaintiff insists that the fact that the first police officer on the scene directed Vance and his female companion to move away from Plaintiff supports an inference that Vance was threatening physical violence, and that "law enforcement intervention was needed to halt [an] assault in progress." (Doc. 11, PageID 212; *see also id*., PageID 214 (arguing that the "third party police officer…presumably took an objective view" and concluded that an assault was occurring). Plaintiff postulates: "Had the police officer not detected an imminent threat to Plaintiff, he would not have ordered Defendant Vance to move away." (Doc. 11, PageID 215).

---

[4]Plaintiff does not allege that Perrone and Vance are related in any way, other than residing on the same street near each other (along with Plaintiff himself). No Ohio authority suggests that Vance may be held liable for assault based on Perrone's conduct.

9

But Plaintiff's argument is widely speculative and not supported by the allegations in the complaint. Plaintiff alleges only that the officer instructed Vance and his female companion to move away. (Doc. 3, ¶ 188). That factual allegation is not equivalent to a plausible allegation that Vance was engaged in assault. Under the circumstances, the instructions of the first officer on the scene support no more than a reasonable directive to separate shouting parties in order to de-escalate an ongoing verbal altercation. Notably, police did not charge Vance with assault or with any other crime.

However uncivil, yelling or screaming does not give rise to liability for assault absent the intentional inclusion of a verbal threat of physical harm.[5] Therefore, Defendant Vance's words and actions (raising his voice and gesturing for Plaintiff to move away from his house) – even if Vance used vulgar language and mistakenly believed that he owned the public sidewalk adjacent to his residence – are not sufficient to state a claim of assault. *Accord*, *Greer v. Harreld*, No 2:24-cv-1237-SDM, 2025 WL 27380, at *9 (S.D. Ohio Jan. 3, 2025) (plaintiff failed to plausibly allege facts to support assault claim where defendant yelled and accused plaintiff of trespassing but did not verbally threaten plaintiff, come into physical contact with plaintiff, or move to strike plaintiff); *Braun v. Ultimate Jetcharters, Inc.*, N.D. Ohio No. 5:12-cv-1635, 2013 WL 623495 *14 (Feb. 19, 2013) (dismissing complaint that alleged twenty minutes of yelling without stating any content that would support an inference of a physical threat); *Ullmann v. Olwine, Connelly, Chase, O'Donnell & Weyher*, 123 F.R.D. 237, 251 (S.D. Ohio 1987) (dismissing assault claim on summary judgment where actions would not "cause a reasonable fear of immediate physical violence").

---

[5]Plaintiff admits that he himself was screaming and yelling in front of Vance's house. (Doc. 3, ¶¶ 29-30, 32).

10

### C. Plaintiff's Assertion of New Claims Against Vance

In his opposition to dismissal of his assault claim, Plaintiff asks this Court to interpret his complaint as asserting additional claims against Vance: for "falsification" and for "spoliation." As an experienced attorney, Plaintiff is assumed to know how to plead a valid claim. Yet no such claims are evident from the face of the complaint. The undersigned rejects Plaintiff's attempts to add new claims against Vance in a memorandum in opposition to a motion to dismiss, without moving for leave to amend. In the alternative, the undersigned concludes that Plaintiff's present allegations are insufficient to state either claim as a matter of law.

### 1. Plaintiff Fails to State a Claim for Falsification

In his opposition to Vance's motion to dismiss, Plaintiff suggests that this Court should construe his existing complaint as stating a claim for civil damages against Vance based on his commission of the crime of "falsification" under Ohio R.C. § 2921.13. Plaintiff asserts that Vance was guilty of falsification when he spoke with police officers on the scene and stated "that Plaintiff was being confrontational and disorderly in an effort to deflect from his, Vance's, assault upon the Plaintiff." (Doc. 11, PageID 216-217). The lone allegation related to Plaintiff's newly asserted "falsification" claim alleges that during an interview by police on the scene on August 1, Vance "falsified statements to the police claiming that Plaintiff was screaming at 'his wife' and claiming that he, Plaintiff, owned the 'goddamn sidewalk.'" (Doc. 3, ¶ 189).

In relevant part, Ohio's falsification statute prohibits the following "false statement[s]":

> (A) No person shall knowingly make a false statement… when any of the following applies:

11

> \* \* \*
>
> (2) The statement is made with purpose to incriminate another.
>
> (3) The statement is made with purpose to mislead a public official in performing the public official's official function….

Ohio R.C. § 2921.13.

By itself, Ohio R.C. § 2921.13 is a criminal statute that does not give rise to "an independent civil cause of action for falsification in a private action that is in fact an original action, without the initiation of criminal charges or criminal proceedings pursuant to R.C. 2921.13." *Hershey v. Edelman*, 932 N.E.2d 386, 392, 187 Ohio App.3d 400, 408, 2010 -Ohio- 1992, ¶ 29 (Ohio App. 10 Dist., 2010). Plaintiff does not allege that the State of Ohio or the City of Lebanon have ever initiated criminal proceedings against Vance for statements he made to police during their investigation of the August 1 incident. So to support his newly asserted claim, Plaintiff instead relies on Ohio R.C. §2307.60(A)(1), a broadly written statute that authorizes civil liability for criminal acts. Under the civil statute, "[a]nyone injured in person or property by a criminal act …may recover full damages" in a civil action, subject to certain exceptions. *Id.*

By its terms, Ohio R.C. § 2307.60 "does not require proof of an underlying criminal conviction," *Buddenberg v. Weisdack*, 161 N.E.3d 603, 606, 161 Ohio St.3d 160, 162 (Ohio, 2020). However, "a plaintiff must provide evidence on each element of the underlying criminal act and the plaintiff's damages resulting from that act." *Gentry v. Silver Linings Agency*, 2024-Ohio-5503, ¶ 24, 2024 WL 4863369, at \*3 (Ohio App. 1 Dist., 2024). But therein lies Plaintiff's problem. In addition to the lack of reference in the complaint to the crime of "falsification," or to Ohio R.C. §§ 2921.13 or 2307.60,[6] the single allegation

---

[6] Nowhere in the complaint does Plaintiff cite to the relevant Ohio criminal or civil statutes. Nor does he refer to the crime of "falsification" – a word that does not appear in the complaint either as a freestanding "Count"

12

on which Plaintiff relies is insufficient as a matter of law to state a claim that Vance committed falsification, or that Plaintiff was actually injured by any criminal act.

Consider the content of the two statements allegedly made by Vance as well as the context. In response to an investigating on-scene officer's questions, Vance reportedly (falsely) told the officer that Plaintiff was "screaming" at Vance's wife and that Plaintiff was claiming that he owned "the goddamn sidewalk." In order to constitute criminal falsification, Vance must have made the statements "knowing" of their falsehood, with the "purpose" to incriminate Plaintiff and/or to "mislead" the police officer. But Plaintiff alleges only that the statements were "false." Regardless of the actual truth or falsity of the statements,[7] Plaintiff has not alleged that Vance made the statements with the requisite "knowledge" that they were false when he made them, as well as with the requisite purpose or intent. Nor has Plaintiff alleged actually injury from either statement. Therefore, as currently pleaded, Plaintiff's complaint fails to state a falsification claim against Vance as a matter of law.

In addition, even if Plaintiff were to seek amendment of his complaint to add the essential elements of a falsification claim, it does not appear that such a claim could stand on the two referenced statements made by Vance to the investigating officer. That is because the statements appear to reflect Vance's subjective perception or interpretation of Plaintiff's August 1 behavior, as opposed to the type of verifiable "false statements" that are criminalized by the Ohio statute. *See, generally, Olthaus v. Niesen*, 232 N.E.3d 932, 940-943, 2023-Ohio-4710, ¶ 17 (Ohio App. 1 Dist., 2023) (explaining differences between fact and opinion, dismissing claims filed by police officer against citizens who

---

against Vance or anywhere else.
[7]The complaint alleges that Plaintiff was "screaming" when a female came out of Vance's residence.

alleged his misconduct where the challenged statements were "subject to interpretation.").

### 2. Plaintiff Fails to State a Claim for Spoliation

The other newly asserted claim in Plaintiff's response in opposition to the motion to dismiss is for "spoliation." Plaintiff suggests that the complaint asserts an "independent tort claim for intentional spoliation of evidence" against Vance. (Doc. 11, PageID 217). It does not. The current complaint contains no reference to the word "spoliation" among its eleven enumerated "Counts." The few allegations on which Plaintiff relies to support his newly asserted "spoliation" claim are wholly contained under the "Assault" claim.

Once again, even if this Court were to consider Plaintiff's newly asserted claim, the allegations on which he relies are facially deficient. Plaintiff does not allege intentional conduct by Vance, or other key elements of a spoliation claim. A plaintiff may recover for intentional spoliation if he proves the following five elements: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson Co., Inc.,* 67 Ohio St.3d 28, 29 (1993). "Ohio does not recognize a cause of action for negligent spoliation." *Marok v. Ohio State Univ.,* 10th Dist. No. 13AP–12, 2014-Ohio-1184, 2014 WL 1347535, ¶ 36 (Ohio Ct. App. 10th Dist. March 25, 2014) (additional citation omitted).

In the complaint, Plaintiff generally asserts his belief that video evidence of the incident in front of Vance's residence existed in early August, because Vance or his female companion "were filming the entire [August 1] encounter." (Doc. 3, ¶ 190).

14

According to Plaintiff, when Vance appeared at an August 11 hearing on Perrone's petition for a protective order, he told Plaintiff that his Ring doorbell camera had captured the incident. When Plaintiff asked to see the recording, however, Vance stated he did not have it with him. (*Id.*, ¶¶ 197-199). On an unspecified later date, Vance did not respond when Plaintiff tried to contact him through Vance's son. (*Id.*, ¶200).

Plaintiff does not specifically allege that Vance knew on August 11 that litigation between Plaintiff and Vance was pending or probable. But even if such an inference could be drawn, Plaintiff's allegations fail to state a claim for spoliation because he fails to allege that Vance engaged in *intentional* spoliation. For example, Plaintiff summarily concludes: "Plaintiff believes, and therefore alleges, that Vance …destroyed the recorded [Ring] evidence" on some unspecified date. (*Id.*, ¶201). That single allegation is insufficient because Plaintiff fails to allege the essential elements: (1) that any destruction was <u>intentional</u>; and (2) was designed to disrupt Plaintiff's case. It is unclear whether Plaintiff actually believes that it was Vance who destroyed the video, rather than the automated Ring software itself. In his opposing memorandum, Plaintiff freely admits that he does not actually know *whether* the video was destroyed, either intentionally or negligently. "[T]he actual fate of [the Ring video] evidence is not fully known by Plaintiff." (Doc. 11, PageID 217).

In terms of the key elements of a spoliation claim, Plaintiff's existing allegations also fail to allege that any destruction of the video did (or will) disrupt Plaintiff's case. Given that Plaintiff alleges that police at the scene engaged their body worn cameras, it appears likely that the purported Ring video is largely duplicative of other evidence.

15

Plaintiff also fails to allege that its destruction - if it was destroyed - proximately caused him any damages.

Plaintiff asserts that this Court should deny the motion to dismiss his (hypothetical) spoliation claim because he intends to conduct discovery to "assist in determining *whether* Plaintiff has a viable claim for spoliation." (Doc. 11, PageID 217, emphasis added). Fed. R. Civ. P. Rule 11 requires the signing party to conduct a reasonable investigation *prior to* filing a complaint, and to certify that factual allegations "have evidentiary support or, *if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery*." Rule 11(b)(3), Fed. R. Civ. P. (emphasis added). It is not clear that the complaint as written comports with this standard. But again, what is clear is that Plaintiff's *present* allegations fail to state a plausible spoliation claim.[8]

### IV. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT:**

1. Defendant Vance's motion to dismiss for failure to state a claim (Doc. 4) be GRANTED with all claims against that Defendant to be DISMISSED;

2. Defendant Vance's alternative motion for judgment on the pleadings (Doc. 4) be DENIED AS MOOT.

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[8] This Report and Recommendation is limited to Plaintiff's complaint as it is currently written, and expresses no opinion on any hypothetical future amendment.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROGER D. STATON,

    Plaintiff,

    v.

DOMINICK PERRONE, et al.,

    Defendants.

Case No. 1:24-cv-592

Hopkins, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).